HAWTHORNE, Justice.
 

 Defendant, W. C. Kaufman, Jr., has appealed to this court from his conviction of the crime of negligent homicide and his sentence to serve two years at hard labor in the state penitentiary.
 

 Defendant was prosecuted under an indictment returned by the grand jury of Calcasieu Parish, charging that he “did, by the criminally negligent operation of a motor vehicle, kill one Richard E. Ayres, in violation of Article 32 of the Louisiana Criminal Code”. Ayres met his death as a result of being struck by an automobile driven by the accused on U. S. Highway 90 west
 
 *524
 
 of Lake Charles, Louisiana, at or near a railroad crossing.
 

 The indictment charged the offense as having been committed on September 24, 1946. The grand jury returned and filed the indictment on October 8, and on October 9 defendant was arraigned and pleaded not guilty, and the case was fixed for trial for October 22, 1946. On the day the case was called for trial, defendant appeared through counsel and filed a motion for a continuance. This motion was overruled, and Bill of Exception No. 1 was reserved.
 

 Defendant’s motion alleged that on October 21, the day before the case was fixed for trial, it was discovered that the railroad crossing over the highway where the accident occurred was defective, and that the defect was the cause of defendant’s losing control of his car, resulting in the fatal accident, and that, if these facts were true, the negligent act or omission of the person or agency charged with the duty of maintaining the crossing was the proximate cause of the fatal accident, and that defendant should be allowed to investigate and obtain other evidence fixing the responsibility in this case, and that neither defendant nor his counsel had opportunity to go thoroughly into the matter and get the names of the witnesses to establish these facts.
 

 This motion did not give the names of any witnesses by whose testimony defendant sought to prove these allegations, nor did it set forth to what facts the witnesses would testify at the trial in the event they were called on defendant’s behalf.
 

 In overruling the motion for a continuance the trial judge stated that from the motion itself it appeared that the defense had just discovered the defect in the crossing, although the defect must have existed at the time the accident occurred for otherwise evidence as to the defect would be immaterial; that there was no allegation in the motion to show why it was impossible for the defense to have obtained this information prior to October 21; that it also appeared that the defense must already have had some evidence as to that defect if it was prepared to present evidence in support of the motion; that, even though all of the facts alleged in the motion were proved, it would not warrant the court’s granting a continuance within the exercise of its discretion.
 

 In his per curiam to the bill the district judge called our attention to the fact that the attorneys who represented the accused at the trial had been employed for that purpose some time prior to the arraignment, which occurred, as we have stated, on October 9. In this per curiam he again pointed out that defendant in his motion alleged, in effect, that he had already discovered evidence as to the condition of the crossing, but that he desired additional time within which to obtain evidence as to the person or agency charged with the duty of maintaining the crossing, and, further, that the person or agency responsible for main-
 
 *526
 
 tabling the crossing was not on trial in these proceedings, and that, even though defendant should discover and attempt to introduce evidence as to the identity of such person or agency, such evidence would be inadmissible since it would have no relevancy to this case.
 

 The trial judge further stated that, if the railroad crossing was defective and such defective condition caused, or contributed to, defendant’s losing control of his automobile, defendant would, of course, be entitled to introduce evidence as to the condition of the crossing, and in fact at the trial of the case was permitted to introduce such evidence.
 

 It is well settled that the granting or refusing of any continuance is within the sound discretion of the trial judge, and a careful consideration of all the facts and circumstances, which we have set out hereinabove, convinces us that the trial judge did not abuse his discretion. Moreover, the motion showed on its face the absence of due diligence on the part of the defendant.
 

 Counsel for defendant in brief contend that they were entitled to introduce evidence in support of this motion, and cite in support thereof the provisions of Article 323 of the Louisiana Code of Criminal Procedure, to the effect that every motion for a continuance shall be tried summarily and contradictorily with the opposite party, and that, unless the evidence shows to the satisfaction of the court that the mover is entitled to a continuance, the court shall order the trial to be proceeded with forthwith. •
 

 Their contention is based on the fact that, after the trial judge had overruled the motion for a continuance, defendant through counsel made the statement: “We tender our evidence.” The court permitted the record to .show that the evidence was tendered in support of the motion. Upon objection by .the State, counsel for defendant stated that they were tendering evidence to show when the facts alleged in their motion were discovered, that is, simply the evidence of the time of discovery. Thereupon the court again overruled the motion.
 

 It is true that a defendant in a criminal case is entitled to introduce evidence in support of a motion for a continuance. However, in this case the motion itself alleged that the facts constituting the basis for the continuance were discovered by the defendant and his counsel on October 21, 1946. This was not denied by the State and is not an issue presented by this motion. This being so, there was no necessity of offering any evidence or making any proof of the time of discovery, and, since the defendant was permitted to show at the trial the condition of the crossing on the day of the accident, we do not think that he was prejudiced in any way.
 

 
 *528
 
 Bill No. 2 involves the correctness of the trial judge’s ruling in sustaining an objection made by the State to a question propounded to W. A. Nelson, a witness called by the defense.
 

 The question asked the witness was: “I will ask you whether or not you have had a recent experience in crossing that railway crossing” (the railway crossing mentioned in the question being the one at or near the place where the deceased Ayres met his death). The question was objected to by the district attorney for the reason that the answer to the question would have no probative value whatsoever because any experience which the witness might have had at the particular crossing could not assist the jury in determining the guilt or innocence of the defendant. This objection was sustained by the court, and this bill was reserved.
 

 The trial judge’s per curiam set forth that the defense witness Nelson was not permitted to testify to the facts relating to a personal experience which he had had in driving over the railroad crossing near the scene of the accident, for the reason that the court considered such testimony irrelevant and immaterial to the issues involved, and that the fact that this witness might or might not have had difficulty in driving an automobile over the crossing had no bearing on the question of whether the defendant should or should not have experienced the same difficulties at another time, in another automobile, and under different conditions, and that to admit this testimony would open the door to the State to introduce testimony of other witnesses who had negotiated the crossing without difficulty. The trial judge further stated that the witness was permitted to testify as to the condition of the railroad crossing and even to express his opinion as to the effect this crossing might have on the operation of an automobile driven over it.
 

 Since this witness was permitted to testify as to the condition of the crossing and even to give his opinion as to the effect this crossing might have on the operation of an automobile driven over it, we are unable to see how his personal experience in driving over this railway crossing wouW be relevant to the issue in this case.
 

 The rule is well settled that the excluding of testimony because of irrelevancy rests largely in the discretion of the trial court. State v. Walker, 204 La. 523, 15 So.2d 874, and authorities therein cited. In our opinion the trial judge in sustaining the objection to this testimony did not abuse his discretion.
 

 Counsel for defendant in brief cite numerous civil cases for the proposition that, on the question of the admissibility of testimony of prior accidents or injuries under circumstances similar to that into which inquiries are being made, the weight of authority appears to be in favor of its relevancy for the purpose of showing the dangerous character of the locus and prov
 
 *530
 
 ing knowledge of the danger on the part of the agency under whose control it is. They rely principally upon the civil case of Jones v. Texas & P. R. Co., La.App., 154 So. 768. Neither the cases relied on nor the rulings as set forth therein have application to the question presented by this bill. The rule relied on by counsel for defendant, which,' as we have stated hereinabove, has no application, is found in 1 Wharton’s Criminal Evidence, 11th Ed., Section 357, pages 522, 554, as follows :
 

 “Upon a criminal prosecution for injuries caused by negligence, evidence of other acts, disconnected though similar, is irrelevant. Criminal negligence, like many other crimes, may involve both criminal and civil responsibility, criminal responsibility to the state for the violation of the law, upon conviction of which punishment may be inflicted, and civil responsibility to the party injured, upon proof of which damages, and, in some states, in addition, exemplary damages, are recoverable. * * Testimony is admissible in negligence cases to show dangerous conditions on the part of the defendant, notice of a previous, continuous, defective condition, or knowledge of the dangerous character of the thing or act. This notable exception to the rule applies only in civil cases where the issue is not strictly the culpability of the defendant, but where the issue is, Who was responsible for or was the author of the act? In such issues, evidence of other acts, performed at other times, similar to the act charged under investigation, is admissible. The rule as to the relevancy of other offenses in criminal or culpable negligence is: (a) In prosecution to enforce the criminal responsibility for the alleged violation or omission of plain duty in law, evidence of other offenses is not relevant to the principal charge, (b) In civil actions for damages, to show notice, or knowledge of a continuous, defective condition of, or the dangerous nature of, the agency, or of the act done or omitted to be done, evidence of other like offenses is relevant.”
 

 We do not have before us a civil suit for damages against the parties charged with the responsibility of maintaining the crossing, and the civil rule relied on by defendant has no application.
 

 As to Bill No. 3, defense counsel tendered the witness S. O. Shattuck for the purpose of proving the same facts sought to be adduced from the witness W. A. Nelson. Upon objection by the State the court excluded the testimony. This bill presents the identical question which we have already discussed in connection with Bill No. 2 and therefore requires no further consideration on our part.
 

 According to Bill of Exception No. 4, William Jackson, a witness in behalf of defendant, testified that he was a mechanic and was familiar with defendant's automobile; that the automobile made a loud
 
 *532
 
 noise as if it had no muffler because its exhaust pipe was defective and full of holes.
 

 The bill further recited that, to fix the time when the automobile was in this condition, on direct examination the witness Jackson was asked whether the defendant Kaufman had called at his place of business several times recently and inquired whether a new exhaust pipe ordered by him had arrived. The State objected to this question on the ground that the testimony sought was irrelevant and immaterial. The objection was sustained by the court, and counsel for defendant reserved this bill.
 

 Counsel stated that this testimony was sought for the purpose of rebutting evidence of the State elicited from its witnesses to the effect that they judged the speed of the automobile, which was coming toward all of them, by the noise it made, there being no other evidence by which the speed was judged.
 

 The trial judge in his per curiam said that this bill of exception indicated that all the witnesses for the State judged the speed of defendant’s automobile by the noise it made, and that there was no other evidence by which the speed was judged, and that this statement in the bill might be misleading and should be clarified. The trial judge, who heard all of the testimony during the progress of the trial, pointed out that at least four witnesses for the State testified that they were experienced drivers of motor vehicles, that they saw defendant’s automobile both before and after it had crossed the railroad, that they heard the motor and the sound of the wind, that the automobile was driven within a few feet of them, struck the decedent, and continued past them until it struck another automobile driven in the same direction, and then continued on until it ran into art embankment on the side of the road. Each of these witnesses estimated the speed at which the vehicle was driven at various points along the highway before and after it struck the decedent, and each testified that, when he first observed defendant’s car approaching, he might have judged the speed largely by the sound of the motor but that, as he listened to the sound, he also saw the automobile. The trial judge stated that it was his opinion that, as the automobile approached these witnesses, all of these mentioned factors were considered by them in estimating the speed at which it was being di'iven. >
 

 The testimony of these witnesses for the State is not in the record, and it is well settled that, in the absence of such testimony, the trial judge’s per curiam is controlling. State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Lowry, 153 La. 177, 95 So. 596; State v. Burris, 204 La. 608, 16 So.2d 124; State v. Gros, 204 La. 705, 16 So.2d 238.
 

 
 *534
 
 The witness Jackson having testified that the automobile made a loud noise as if it had no muffler because its exhaust pipe was defective and full of holes, we do not think the testimony solicited from this witness with reference to defendant’s inquiries about the arrival of a new exhaust pipe ordered by him was relevant or material in this case, or that this evidence in any way would have proved the condition of the automobile at the time of the accident.
 

 We do not think that the trial judge abused his discretion in excluding this testimony, or that defendant was prejudiced by this ruling.
 

 The defendant, W. C. Kaufman, Jr., was sworn as a witness in his own behalf and during cross-examination by the district attorney was asked: “Mr. Kaufman, will you now state to the jury whether, after you got to St. Patrick’s Hospital, you were requested by anyone to submit to a test of alcoholism?
 

 The defense objected to this question on the ground that it was an attempt on the part of the State to make the witness give an incriminating answer, and that under the law no person can be compelled to give testimony against himself that will incriminate or might have' a tendency to incriminate him.
 

 The trial judge having overruled the objection, the witness was required to answer the question, and Bill of Exception No. 5 was reserved. The record, however, does not disclose his answer, and we have no way of knowing whether he replied to the question in the affirmative or in the negative. The trial judge pointed out in his per curiam that defendant was not compelled to take the witness stand but had done so at his own request, and that, having elected to testify in his own behalf, under Article 462 of the Code of Criminal Procedure he was subject to all the rules that apply to other witnesses and could be cross-examined upon the whole case; that on direct examination he testified, in effect, that he had had three drinks of intoxicating liquor within a period of a few hours before the accident occurred, but that he was not under the influence of intoxicating liquor at the time of the accident; that under these circumstances the court considered the question proposed by the State to be a proper one to propound to the defendant by the State on cross-examination in view of his testimony on direct examination.
 

 The accused having elected to testify in his own behalf and having testified on direct examination that he was not under the influence of intoxicating liquor at the time of the accident, it was proper for the State to cross-examine him on this phase of the case, and the trial judge correctly overruled the objection.
 

 Counsel for defendant concede that under the law, when an accused person be
 
 *536
 
 comes a witness in his own behalf, he shall be subject to all the rules which apply to other witnesses and may be cross-examined on the whole case. They contend, however, that neither a defendant nor any other witness can be required to give testimony against himself when he takes the witness stand which might incriminate or have a tendency to incriminate him in another prosecution. In support of this contention they rely on the provisions of the Constitutions of the United States and of this state, Const. U. S. Amend. 5, Const. La. 1921, art. 1, § 11, that no person shall be compelled in any criminal case to be a witness against himself or, as expressed in the Louisiana Constitution, that no person shall be compelled to give evidence .against himself in any criminal case or in any proceeding that may subject him to a criminal prosecution.
 

 We do not think that the constitutional provision, relied on by defendant, .against compelling a person to be a witness against himself in a criminal action is applicable under the facts presented by this bill. Furthermore, we do not see how defendant’s answer to the question, whatever it may have been, could subject him to a further criminal prosecution, as his willingness or refusal to take the sobriety test, in itself, makes no proof of any other crime.
 

 The rule with reference to waiver of privilege against self-incrimination by a defendant who voluntarily takes the stand as a witness on his own behalf is given in 8 Wigmore on Evidence, 3rd Ed., Section 2276, Subsection 2, page 440, as follows: “The case of an
 
 accused
 
 in a criminal trial who
 
 voluntarily
 
 takes the stand, is different [from that of an ordinary witness]. Here his privilege has protected him from being asked even a single question, for the reason that no relevant fact could be inquired about that would not tend to criminate him.
 

 * * * On this very hypothesis, then, his voluntary offer of testimony upon any fact is a waiver as to
 
 all other relevant facts,
 
 because of the necessary connection between all. His situation is distinct from that of the ordinary witness, with reference to the point of time when a waiver can be predicated, because the ordinary witness is compelled to take the stand in the first instance, and his opportunity for choice does not come till later, when some part of the criminating fact is asked for; while the accused has the choice at the outset.” (All italics ours.)
 

 The sole issue here is whether the defendant by the criminally negligent operation of a motor vehicle killed the deceased, and his intoxication, or the question of whether he was under the influence of intoxicating liquors at the time the deceased met his death, is relevant to that issue.
 

 In support of their contention that the trial judge erred in overruling defendant’s objection to the question propounded to him by the district attorney, counsel cite the Louisiana cases of State v. McKowen, 126
 
 *538
 
 La. 1075, 53 So. 353; State v. Oden et al., 130 La. 598, 58 So. 351, and State v. Allemand et al., 153 La. 741, 96 So. 552.
 

 In the McKowen case, the defendanUrefused to answer a question, claiming the privilege of those who do not choose to testify to particular facts that might be incriminating. This court found that there was no good reason for the witness not to have answered the particular question as propounded, and that it should have been answered. That case is authority only for the proposition that it was not error to compel the witness to claim this privilege in the presence of the jury, and hence is not applicable here.
 

 A careful analysis of the Oden and Allemand cases shows that they are not authority for the contention of the defense in this case, for, as we have pointed out, in our opinion the answer sought to be elicited by the question propounded by the district attorney in this case was not of an incriminating nature.
 

 Counsel also cite and discuss at length the case of State v. Thomas, 208 La. 548, 23 So.2d 212. In that case we simply held that it was error for the trial judge to refuse the defendant at his request the right to take the stand out of the presence of the jury for the restricted purpose of testifying that a purported confession was not obtained freely and voluntarily, without subjecting him to .cross-examination upon the whole case. That case is not authority for defendant’s contention.
 

 ' According to Bill No. 6, after the defense had rested, the State recalled Cullen Goldman, a state trooper, to rebut the testimony of a defense witness, Mrs. Lorena Brown, that she saw and talked to defendant soon after the accident, and that defendant- appeared to be perfectly normal and sober, and also her testimony as to acts and cqnduct on defendant’s part at the time which indicated that he was not under the influence of intoxicating liquor. In rebuttal the witness Goldman testified that he did not see Mrs. Lorena Brown. After the State had completed its rebuttal testimony, defendant through counsel then tendered the evidence of defendant and of Mrs. Brown to explain to the court and the jury that the conversation between him and Mrs. Brown .took place prior to the arrival of the state trooper, Goldman. The State objected to the introduction of this testimony, the objection was sustained, and this bill was reserved.
 

 According to the per curiam of the trial judge, after the State had concluded its rebuttal evidence, which did not introduce any matters other than those brought out by the defense in presenting its case, the defense offered to call the defendant to the stand to rebut a portion of the State’s rebuttal evidence, and the trial judge sus-tained the objection of the -State undér the ! authority of Article 378- of -the- Code-of Criminal1 Procedure. - This article féads as-> follows: “The prosecution has ¡the right-to rebut the evidence- adduced by 'the de-
 
 >
 
 
 *540
 
 fendant, but the defendant is without right to rebut the prosecution’s rebuttal.”
 

 In the recent case of State v. Monroe, 205 La. 285, 17 So.2d 331, 332, this court in discussing what is meant by “rebutting evidence”, had this to say:
 

 “Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Hemler, 157 La. 902, 103 So. 257.
 

 “It is rebuttal, not impeaching, to show that the statement of the witnesses as to what occurred is not true. State v. Foster, 150 La. 971, 91 So. 411. And contradiction is one of the means of rebutting the testimony of a witness produced by the defendant in .a criminal prosecution as the State can not contradict the testimony of a witness for the defendant until the testimony is offered in defendant’s behalf on the trial of the case. State v. Blount, 124 La. 202, 50 So. 12.”
 

 The testimony of the various witnesses referred to in this bill is not in the • record before us, but, according to the trial judge’s per curiam, the State in rebuttal did not introduce any new matters other than those brought out by the defense in presenting its case, and under these facts and circumstances we cannot say that the trial judge abused his discretion or erred in sustaining the objection of the State to the testimony which defendant tendered, under the provisions of Article 378 of the Code of Criminal Procedure;
 

 The statement of the State’s witness Goldman that he did not see the defense witness, Mrs. Lorena Brown, at the scene of the accident is negative in its nature, and its effect and weight were a question solely for the jury, which had heard the testimony of all the witnesses in the case, and his testimony was rebuttal evidence under the .definition of that term given in State v. Monroe, supra.
 

 Since we have concluded that the testimony given by the officer Goldman was rebuttal evidence, and since under the provisions of Article 378 of the Code surrebuttal is not allowed or permitted, the cases cited by counsel for defendant in their brief have no application for the reason that they are cases dealing with the impeaching of defense witnesses with reference to prior inconsistent statements or cases where the prosecution had introduced or brought out new evidence in rebuttal after the defendant had closed his case. The per curiam of the trial judge makes it clear that neither of these situations existed in the case here under consideration.
 

 Bill No. 7 was reserved to the refusal of the trial judge to give a special charge to the jury, requested by counsel for the defense. This special charge is as follows:
 

 “I charge you, gentlemen, that in the meaning of the law the ‘proximate cause’ of injury is that which in a natural and continuous sequence, unbroken by inde
 
 *542
 
 pendent causes, produces the injury, and without which it would not have occurred; proximity as to time or space being unimportant except as showing the proximity of causation. Two agencies, acting independently of each other may jointly and concurrently be the proximate cause of an injury when it would not have happened except for a concurrence at approximately the same time and place of the two negligent acts. Where decedent, through defects in a street rendering it unsafe for travel, was thrown from his wagon upon a street car track immediately in front of a car running at a dangerous and negligent rate of speed, and was thereby killed, the negligence of both the city and the street railway company could be deemed the proximate cause of the death.
 

 “I charge you, then gentlemen, if you should find from the evidence submitted to you on the trial of this case that the accused lost control of his automobile because of defects in the railway crossing, or In the highway traversed * * * by the accused, and that the death of Richard E. Ayres followed as a natural sequence, even though you should further find negligence ■on the part of the accused, you should find him not guilty, because the aforesaid defects are the proximate cause or causes of the collision as a matter of law.”
 

 We think that the trial judge was correct in his refusal to give this special charge, as ft is not a correct statement of the law of proximate cause applicable to a criminal charge of negligent homicide based on an indictment charging that defendant did by the criminally negligent operation of a motor vehicle cause the death of some named individual.
 

 The trial judge’s entire charge to tbe jury was in writing, and we find it in the record. In our opinion, the law with reference to criminal negligence was expressed correctly in this charge and the law of proximate cause was set forth therein in a manner which was very favorable to the accused.
 

 In 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., under the chapter on proximate cause, we find the following:
 

 “There can be but one proximate cause of an injury, but there may be many proximately contributing causes, and the proximate cause may be separate and distinct acts of negligence.
 

 “ ‘Concurrent causes’ are causes acting contemporaneously and together causing an injury, which would not have resulted in absence of either.
 

 “Otherwise stated, where several causes combine to produce injuries a person is not relieved from liability because he is responsible for only one of them. It is sufficient that his negligence is an efficient cause without which the injury would not have resulted and that the other cause is not attributable to the person injured.” (Section 2551)
 

 
 *544
 
 “So the fact of the concurrence of a defect in a highway and negligent driving of his automobile to cause an injury does not excuse or relieve from liability the driver of the automobile, and, where a truck driver negligently drove into a plate glass window, the fact that the city may have contributed to the injury by its negligence in repairing the rough condition of the streets did not relieve the truck driver from all liability.” (Section 2552)
 

 1 Wharton’s Criminal Law, 12th Ed., Section 482, gives the following illustration of the rule: “When two drivers were negligently racing with their respective carts on a public road, and one of the carts killed a traveler on the road, both drivers were held responsible for manslaughter. And this rule holds good in respect to all cases where an injury is produced to an innocent third person by a collision between two parties who are both negligent.”
 

 If it is true that the condition of the crossing was a contributing or concurrent cause of the fatal accident, and if its condition was due to separate and distinct acts of negligence in the omission of the parties whose duty it was to maintain it in good condition, this negligence would not excuse the defendant if he himself were guilty of criminal negligence as that term is defined under Article 12 of the Criminal Code, Act 43 of 1942.
 

 We have, read the judge’s charge to the jury, and in our opinion it was an eminently fair and impartial one. In refusing to give the special charge the trial judge commented in his per curiam that the last paragraph of the requested special charge might indicate to the jury that, if the condition of the railway crossing contributed in any way to the accident, regardless of how slight the contribution may have been, then defendant should be acquitted of his own conduct or action, and this the trial judge stated he did not understand to be the law.
 

 The conviction and sentence are affirmed.